IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER ANN KNOWLES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>ACTING COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. ) | Civil Action No. 12-1876 |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 24th day of March, 2014, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, granted, and the Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, denied. The Commissioner's decision of January 18, 2012, will be reversed and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to sentence 4 of 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed her pending application for DIB on May 6, 2011, alleging a disability onset date of November 26, 2007, due to, *inter alia*, diabetes, neuropathy and depression. Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on December 23, 2011, at which plaintiff, represented by counsel, appeared and testified. On January 18, 2012, the ALJ issued a decision finding that plaintiff is not disabled. On October 22, 2012, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 32 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). She has at least a high school education and has past relevant work experience as a pharmacy technician, retail cashier, sales associate and waitress, but she did not engage in any substantial gainful activity during the relevant time period from her alleged onset date through her date last insured of June 30, 2010.[1]

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

---

[1] For purposes of plaintiff's Title II application, the ALJ found that plaintiff last met the insured status requirements of the Act on June 30, 2010. Accordingly, in order to be eligible for Title II benefits, plaintiff was required to show that she became disabled prior to that date.

The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairment of diabetes mellitus with peripheral neuropathy,[2] she does not have an impairment or combination of impairments that meets or medically equals the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that as of her date last insured plaintiff retained the residual functional capacity to perform light work but limited to: occasional fingering with her dominant hand; simple, routine, repetitive tasks involving simple work-related decisions and relatively few changes in workplace settings; and, a low-stress environment with no fast-paced production standards. (R. 17). Taking into account these restrictions, a vocational expert identified a number of jobs that plaintiff could have performed through her date last insured, based upon her age, education, work experience and residual functional capacity, including coupon redemption clerk, ticket seller and cigarette vendor. Relying on the vocational expert's testimony, the ALJ found that although plaintiff could not perform her past relevant work as of her date last insured of June 30, 2010, there were other jobs existing in significant numbers in the national economy that plaintiff could have performed through that date. Accordingly, the ALJ determined that plaintiff is not disabled.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(2)(A).

---

[2] The ALJ considered plaintiff's other impairments, including depression, and found them to be non-severe.

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[3] 20 C.F.R. §404.1520; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises three challenges to the ALJ's decision: (1) that the ALJ failed to identify and explain a conflict between the vocational expert's testimony identifying specific jobs that plaintiff retained the residual functional capacity to perform and the descriptions of those jobs contained in the Dictionary of Occupational Titles ("DOT") and the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"); (2) that the ALJ erroneously found plaintiff's depression to be not severe at step 2; and, (3) that the ALJ's residual functional capacity finding is not supported by substantial evidence. After reviewing the ALJ's decision and the record, the court is satisfied that the ALJ committed no reversible step 2 error and that her residual functional capacity finding is supported by substantial evidence. Nevertheless, pursuant to SSR 00-4p, the court finds that this case must be remanded to the Commissioner for additional proceedings in order to address the apparent conflict between the vocational expert's testimony and the information set forth in the DOT and the SCO.[4]

---

[3] The ALJ must determine in sequence: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §404.1520.

[4] The DOT is a United States Department of Labor publication containing descriptions of the requirements for thousands of jobs in the national economy. Martin v. Barnhart, 240 Fed.Appx. 941, 943 (3d Cir. 2007). Its companion volume, the SCO, details the physical demands of each listed job. Alexander v. Astrue, 2008 WL 4091684 (E.D.Pa., Sept. 2, 2008). The DOT, together with the SCO, is the primary source of job requirements relied upon in making disability determinations. SSR 00-4p.

The court first will address plaintiff's challenge to the ALJ's step 2 finding that her depression is not a severe impairment. At step two, the ALJ must determine whether a claimant's impairments are severe as defined by the Act. 20 C.F.R. §404.1520. "[An] impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(a). The step two inquiry is a *de minimus* screening device and, if the evidence presents more than a slight abnormality, the step two requirement of severity is met and the sequential evaluation process should continue. Newell, 347 F.3d at 546.

Although "[r]easonable doubts on severity are to be resolved in favor of the claimant," Id. at 547, the ALJ concluded in this case that plaintiff's depression did not have more than a *de minimus* effect on plaintiff's ability to perform basic work activities and, therefore, is not severe. Based upon, *inter alia*, a lack of objective findings to indicate the severity of plaintiff's depression, the fact she never received outpatient therapy or counseling for depression, and that she did not seek evaluation or treatment with any mental health professional during the relevant time period, the ALJ reasonably concluded that plaintiff's depression had no more than a minimal impact on her ability to perform basic work activities. The evidence outlined in the ALJ's decision supports this conclusion. (R. 16-17).

In addition, the ALJ did not deny plaintiff's claim at step 2, but instead considered the impact of all of plaintiff's medically determinable impairments, severe and not severe, on plaintiff's residual functional capacity before finding plaintiff not disabled at step 5.[5] Accordingly, the ALJ's

---

[5] To the extent plaintiff's depression, in combination with her other impairments, resulted in limitations, the ALJ accounted for them in the residual functional capacity finding by restricting plaintiff to "simple, routine, repetitive tasks involving only simple work-related decisions and relatively few changes in workplace settings and requires a low-stress environment defined as no fast-paced production standards." (R. 17).

finding that plaintiff's depression is not severe not only is supported by substantial evidence but also had no effect on the ultimate determination of non-disability. Cf., McCrea v. Commissioner of Social Security, 370 F.3d 357, 360-61 (3rd Cir. 2004) (the Commissioner's determination to *deny* a claim at step 2 "should be reviewed with close scrutiny" because step 2 "is to be rarely utilized as a basis for the denial of benefits".)

The court also is satisfied that the ALJ's residual functional capacity finding is supported by substantial evidence.[6] The ALJ found that plaintiff retains the residual functional capacity to perform light work with a number of restrictions accounting for any limitations arising from her impairments. (R. 17). Although plaintiff disputes this finding, it is clear from the record that the ALJ adequately considered all of the relevant medical evidence and all other evidence, in assessing plaintiff's residual functional capacity for light work, and that she incorporated into her finding all of the limitations that reasonably could be supported by the evidence. (R. 17-20). In fact, the numerous restrictions set forth in the residual functional capacity finding demonstrate that the ALJ gave plaintiff the benefit of any doubt in rendering her assessment.

While the ALJ's residual functional capacity finding is supported by substantial evidence, this case nevertheless must be remanded for further proceedings pursuant to SSR 00-4p due to an unresolved apparent conflict between the jobs identified by the vocational expert as ones plaintiff retained the ability to perform prior to her date last insured and the descriptions of those jobs as set forth in the DOT and, in particular in this case, the SCO.

---

[6] At step 5, the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with her medical impairments, age, education, past work experience and residual functional capacity. 20 C.F.R. §404.1520(f). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by her impairments. 20 C.F.R. §404.1545(a); Fargnoli, 247 F.3d at 40.

SSR 00-4p was issued to clarify the standards for identifying and resolving conflicts between occupational evidence provided by a vocational expert and information contained in the DOT, including its companion publication, the SCO. The ruling requires the ALJ to identify, and obtain a reasonable explanation for, any such conflict, and also to explain in the decision how any conflict that has been identified was resolved. The Third Circuit Court of Appeals has interpreted SSR 00-4p to require that "the ALJ ask the vocational expert whether any possible conflict exists between the vocational expert's testimony and the DOT," and, if the testimony does appear to conflict with the DOT, the ruling directs the ALJ "'to elicit a reasonable explanation for the conflict.'" Burns v. Barnhart, 312 F.3d 113, 127 (3d Cir. 2002). "The Ruling requires that the explanation be made on the record and that the ALJ explain in his decision how the conflict was resolved." Id.

Here, at the hearing the vocational expert identified three categories of representative jobs that plaintiff could have performed through her date last insured based upon her age, education, work experience and residual functional capacity for light work with the restrictions noted by the ALJ, including a limitation to "occasional fingering with the dominant hand": coupon redemption clerk (DOT # 290.477-010); ticket seller (DOT #211.467-030); and, cigarette vendor (DOT # 291.457-010). (R. 83-84). The ALJ then asked the vocational expert if his testimony was consistent with the information found in the DOT and the SCO, to which the vocational expert responded, "yes, it is." (R. 88). In her decision, after having "determined that the vocational expert's testimony is consistent with the information contained in the [DOT]," the ALJ relied upon the vocational expert's testimony and concluded that "through the date last insured, plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R.22).

It is clear, however, that the vocational expert's testimony in this case was <u>not</u> consistent with the information contained in the SCO. Appendix C of the SCO sets forth 20 physical demand components which "provide a systematic way of describing the physical activities that an occupation requires of a worker." One of these components is "fingering," which encompasses "picking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling."

Although the vocational expert testified that plaintiff could perform the jobs of coupon redemption clerk, ticket seller and cigarette vendor with a residual functional capacity that included a restriction limiting her to "occasional fingering" with her dominant hand, the SCO indicates that the ticket seller position requires fingering "constantly", and the coupon redemption clerk and cigarette vendor positions both require fingering "frequently."[7] See SCO 07.03.01 and 08.03.01. Because the ALJ failed to identify and resolve this conflict,[8] she could not properly rely on the vocational expert's testimony to support her finding that plaintiff is not disabled. See, e.g., Rivera-Negron v. Astrue, 2013 WL 5823713 (E.D.Pa., Oct. 30, 2013)(where ALJ failed to resolve conflict between vocational expert testimony and DOT, decision not supported by substantial evidence); Ehrhart v. Colvin, 2013 WL 4540700 (M.D.Pa., Aug. 27, 2013)(ALJ erroneously accepted testimony of vocational expert who indicated that his testimony was consistent with DOT when

---

[7] The SCO provides that "occasionally" means that the activity or condition exists up to 1/3 of the time; "frequently" means the activity or condition exists up to 2/3 of the time; and, "constantly" means the activity or condition exists 2/3 or more of the time. SCO, Appendix C.

[8] The Commissioner suggests that this apparent conflict somehow was waived because <u>plaintiff</u> did not challenge the vocational expert's testimony by inquiring into the fingering requirements of the position. However, it has been recognized that SSR 00-4p "was designed to address the already-well-established ... obligation of an ALJ to develop the record during an adjudicative hearing." Rutherford v. Barnhart, 399 F.3d 546, 558 (3d. Cir. 2005). Accordingly, SSR 00-4p imposes an affirmative responsibility *on the ALJ* to "identify and obtain a reasonable explanation for any conflicts" as well as to "explain the resolution of the conflict irrespective of how the conflict was identified."

there was conflict relating to claimant's visual acuity); Alexander, supra (remand where ALJ failed to identify and explain conflict between vocational expert testimony and DOT).

While it is true, as the Commissioner points out, that an unexplained conflict between the DOT and the vocational expert does not necessarily require a remand, see, e.g., Rutherford, 399 at 558 (vocational testimony provided substantial evidence for ALJ's step 5 finding despite minor inconsistencies between that testimony and DOT); Jones v. Barnhart, 364 F.3d 501, 506 (3rd Cir. 2004) (substantial evidence supported step 5 determination despite inconsistencies between vocational expert testimony and DOT where inconsistencies did not exist as to all of the jobs identified by the vocational expert and the vocational expert testified that listed jobs were just examples, not an exhaustive list), a remand in fact is necessary here because the conflict in this case goes well beyond the "minor inconsistencies" present in Rutherford and Jones. Here, all of the jobs identified by the vocational expert as ones plaintiff could have performed on her date last insured appear to be inconsistent with plaintiff's residual functional capacity based on the fingering component required for those jobs as set forth in the SCO. Without a resolution of this conflict, the ALJ improperly relied upon the vocational expert's testimony in finding plaintiff was not disabled during the relevant time period.

On remand, the ALJ must specifically ask the vocational expert about the apparent conflict existing between his testimony and the information contained in the DOT and SCO as it relates to fingering. In accordance with SSR 00-4p, the ALJ must then resolve the conflict by determining if the explanation given by the vocational expert is reasonable and provides a basis for relying on the vocational expert's testimony rather than on the information set forth in the DOT and SCO.

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this opinion.

*/s/ Gustave Diamond*
Gustave Diamond
United States District Judge

cc: Matthew J. Vassallo, Esq.
Olinsky Law Group
One Park Place
300 S. State St., Ste. 420
Syracuse, NY 13202

Paul Kovac
Assistant U.S. Attorney
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

AO 72
(Rev. 8/82)

- 10 -